Filed 7/31/25  P. v. Grady CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARQUISE GRADY,<br><br>    Defendant and Appellant. | D083700<br><br><br><br>(Super. Ct. No. SCD216913) |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Melissa A. Mandel, Seth M. Friedman and Joseph C. Anagnos, for Plaintiff and Respondent.

In 2010, defendant Marquise Grady and three codefendants were charged with multiple offenses arising out of a gang-related shooting in a local liquor store parking lot. Grady was convicted of one count of first degree murder, three counts of premeditated attempted murder, one count of conspiracy to commit murder, and one count of shooting at an occupied vehicle. In 2023, Grady filed a petition for resentencing pursuant to Penal Code section 1172.6,[1] claiming he could no longer be convicted of murder or attempted murder because of recent changes to sections 188 and 189.[2] The trial court summarily denied the petition, finding that Grady failed to establish a prima facie case for relief.

We agree with the trial court that Grady's conviction for conspiracy to commit murder shows that Grady acted with express malice and an intent to kill. So although the jury was instructed on the now-invalid natural and probable consequences doctrine, the conspiracy conviction makes clear the jurors did not rely on this theory in finding Grady guilty of murder and attempted murder. Accordingly, we affirm the order denying relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Both parties refer to our earlier unpublished opinion on direct appeal—*People v. Grady* (Feb. 14, 2012, D057450)—to provide some basic context, understanding that we do not resolve any disputed facts in determining

---

[1] All statutory references are to the Penal Code.

[2] These changes were primarily the result of Senate Bill No. 1437 in 2018 (Stats. 2018, ch. 1015) and Senate Bill No. 775 in 2021 (Stats. 2021, ch. 551).

whether Grady has made a prima facie showing of eligibility for relief.[3] (See *Lewis*, *supra*, 11 Cal.5th at pp. 971–972.) Evidence at trial showed that two cars with a total of five occupants—four males and one female—at least some of whom were associated with a particular street gang arrived in the parking lot of a liquor store within minutes of each other. Three of the men, one of whom was theorized to be Grady, disappeared behind a wall while the remaining man and woman stayed with one of the vehicles, a red Geo. Shortly thereafter, a third car with five male occupants associated with a rival gang entered the parking lot and parked nearby. One of those men went into the liquor store while the other four—the eventual victims— remained inside the vehicle or clustered around it. The three men hidden behind the wall emerged, at least some began shooting, and all then fled in the red Geo with the man and woman. One victim was killed, another was wounded, and the remaining two escaped injury. Ballistics evidence indicated at least five shots were fired from two different weapons.

## DISCUSSION

Grady contends the court erred in summarily denying his section 1172.6 petition without issuing an order to show cause because the record of conviction does not conclusively establish he is ineligible for relief as a matter of law. A trial court considering a section 1172.6 petition first determines if

---

[3]    Both parties have requested we take judicial notice of at least portions of the appellate record in Grady's direct appeal, and in the interest of completeness we grant Grady's request to notice the entire record. It is well settled that in deciding whether the defendant has made a prima facie showing under section 1172.6, the court may consider the entire record of conviction. (See *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*); *People v. Ervin* (2021) 72 Cal.App.5th 90, 106.) Although apparently not presented to the trial court in this case, it would nonetheless be relevant in assessing whether any theoretical error was prejudicial. (*Lewis*, at pp. 972–974.)

the petition makes a prima facie showing that would entitle the petitioner to relief. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In doing so, the court is permitted to review the record of conviction to assess the petitioner's claim of eligibility, but it may not engage in factfinding, weigh the evidence, or exercise discretion. (*Id.* at p. 972.) It must generally take the petitioner's factual allegations as true, but is not required to accept factual allegations refuted by the record of conviction. (*Id.* at p. 971.)

In arguing that his petition asserts a prima facie claim, Grady relies on the fact that the jury was instructed on the natural and probable consequences doctrine as a basis for finding him guilty of both first degree murder and attempted murder. There is no dispute that Senate Bill No. 1437 and Senate Bill No. 775 made statutory changes to California's murder laws effectively eliminating the natural and probable consequences doctrine as a theory of both murder and attempted murder. (See, e.g., *People v. Nino* (2025) 111 Cal.App.5th 844, 850–851; *People v. Henderson* (2025) 110 Cal.App.5th 828, 835–836; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1065.) Thus, unless the record of conviction conclusively demonstrates that Grady was not found guilty of either murder or attempted murder based on a theory of natural and probable consequences, he is potentially eligible for relief under section 1172.6.

There is no question Grady's jury was instructed he could be guilty of both murder and attempted murder based on a theory that (1) he committed a lesser "target" crime, either shooting at an occupied motor vehicle (charged) or assault with a firearm (uncharged), and (2) a murder and/or attempted murder committed by a coparticipant were the natural and probable

4

consequences of these lesser crimes.[4]  Moreover, the People do not dispute that had the jury used this theory to convict Grady of murder or attempted murder, those convictions would be invalid based on changes to the law made by Senate Bill No. 1437 and Senate Bill No. 775.  Instead, they argue that other aspects of the verdict make clear the jurors did *not* rely on the natural and probable consequences doctrine.  Specifically, they assert that because the jury *also* convicted Grady of conspiracy to commit murder, this provided an independent and fully sufficient basis for murder liability.[5]  And having found that Grady conspired to commit murder with an express intent to kill, the jury had no need to resort to any prohibited imputation of malice based on the natural and probable consequences doctrine.

---

[4]     The jury was instructed on the natural and probable consequences doctrine pursuant to CALCRIM Nos. 402 and 403.  Jurors were told that under certain circumstances, a defendant could be guilty of murder or attempted murder based on having committed a different crime.  There were two possible applications of this theory in this case, based on whether the jury found that Grady committed an underlying "target" crime, either the charged crime of shooting at an occupied vehicle or the uncharged crime of assault with a firearm.  Once it concluded that Grady had committed a target crime, he would also be guilty of murder or attempted murder if the jury additionally found that (a) "during the commission of [the target crime], a co participant in that crime committed the crime of Murder or attempt murder," and (b) "[u]nder all the circumstances, a reasonable person in the defendant's position would have known that the commission of Murder or attempt murder was a natural and probable consequence of the commission of the [target crime]."

[5]     The jury was instructed pursuant to CALCRIM No. 563 that in order to establish Grady was guilty of a conspiracy to commit murder as charged, the People had to prove:  "1.  The defendant intended to agree and did agree with one or more of co participants . . . to intentionally and unlawfully kill; [¶] 2.  At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill; [and] [¶] 3.  The defendant or co participants . . . committed at least one overt act . . . ."

5

We have previously addressed the effect of a conspiracy to commit murder conviction on a defendant's ability to state a prima facie claim for relief under section 1172.6. In *People v. Lovejoy* (2024) 101 Cal.App.5th 860 (*Lovejoy*), the defendant Lovejoy was convicted of the attempted murder of her ex-husband and a related conspiracy to murder him arising out of a plan she agreed to with her then-current boyfriend. The plan called for the boyfriend to lure the ex-husband to a remote location and shoot him. Fortunately for the ex-husband, the shot wounded but did not kill him.

Lovejoy filed a petition for relief under section 1172.6, contending that " 'the jury instructions on co-conspiracy liability permitted the jury to find her guilty of attempted murder based upon the natural and probable consequences doctrine.' " (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 866 (*Lovejoy*).) But we rejected her argument, concluding that her posited theory on how the jury might have relied on the natural and probable consequences instructions was necessarily inconsistent with the verdict finding Lovejoy guilty of conspiracy to commit murder, which included a determination that Lovejoy intended to kill her ex-husband. We noted that natural and probable consequences instructions are problematic in the context of a conspiracy charge "only where a defendant is convicted of murder or attempted murder based on a conspiracy to commit 'a lesser crime that resulted in murder.' " (*Id.* at p. 867, quoting *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645.) There was no possibility that Lovejoy merely intended some lesser target offense, such that she was guilty of murder solely because it was the natural and probable consequence of the target offense she intended. (*Lovejoy*, at p. 868.) In *Lovejoy*, as in this case, the jury found that murder was always the "target" offense. And absent a formal withdrawal from the conspiracy—about which there were no instructions or

6

evidence in this case—an agreement to murder continues to make defendants criminally responsible for their coconspirators' efforts to achieve that result without any additional findings with regard to their actions or mental state at the exact moment of the shooting. (*Id.* at p. 869.)

Grady does not address the implications of *Lovejoy* or *Beck and Cruz.* Instead, he cites the Supreme Court's decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) for the proposition that a finding of intent to kill, by itself, does not make a defendant automatically ineligible for relief under section 1172.6. (*Curiel*, at p. 463.) But as we explained in *Lovejoy*, the circumstances of *Curiel* are readily distinguishable. (See *Lovejoy*, *supra*, 101 Cal.App.5th at p. 869, fn. 6.) In *Curiel*, the defendant was charged with murder based on alternative theories of aiding and abetting—direct aiding and abetting and aiding and abetting based on the natural and probable consequences doctrine. (*Curiel*, at p. 446.) The verdict did not specify which theory the jury adopted. (*Id.* at p. 467.) In finding true a gang-murder special circumstance, however, the jury necessarily found the defendant intended to kill. (*Id.* at p. 447.) Yet the Supreme Court determined that where the jury was permitted to find aiding and abetting liability for murder based on the now-prohibited natural and probable consequences doctrine, the abstract finding of intent to kill was not sufficient to demonstrate that the defendant remained guilty of murder under current law. (*Id.* at p. 468.)

This case, in contrast, does not involve an abstract and untethered finding of intent to kill. Rather, that finding was incorporated into an independent theory of murder liability that remains valid under current law. (See *Curiel*, *supra*, 15 Cal.5th at p. 462 ["The Legislature sought to limit murder liability to established theories that incorporated the requisite intent"]; *Lovejoy*, *supra*, 101 Cal.App.5th at pp. 867–868 [conspiracy to

7

commit murder remains valid].)  Where the defendant is convicted of the murder and/or attempted murder of some or all of the same victims that were the object of the conspiracy to commit murder, the conspiracy verdict with its incorporated finding of intent to kill precludes even a theoretical possibility that the defendant was found liable for murder or attempted murder based on the now-invalid natural and probable consequences doctrine.

## DISPOSITION

The order is affirmed.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.